Thank you, your honors. Good morning. My name is Evan Murray. I represent petitioner Yunjia Zhou. The gravamen of this case rests upon the fact that the immigration court failed to adequately consider the totality of the circumstances and all relevant factors. And that's required under Allam v. Garland, a Ninth Circuit case just decided last year. Even more particularly, the immigration court failed to give Ms. Zhou notice and opportunity to provide the corroborative evidence it deemed necessary. Specifically, the court failed to inform Ms. Zhou that she should have her daughter be a witness in her case, which notice is specifically required under the Batara case. Counsel, let's say we agreed with you that there were some problems with the agency decision, but we were to find, for example, that the consulate visit could support an adverse credibility finding. Would you agree that in that instance, we would need to send it back to the agency with our guidance on what they could and couldn't consider for them to reweigh the factors or perhaps send it back to the IJ to give your client an opportunity to come up with corroboration rather than deciding those issues ourselves? Well, Your Honor, I would certainly agree with the court's decision to remand the case for further review. However, I don't necessarily concur that Ms. Zhou's visit to the Chinese consulate disclosed the fact that she wasn't afraid to return to China. It turns out that when Ms. Zhou had come to the United States, she lost her passport. She explained that her passport was her only identification, and she had to have an ID, and that's why she went to the consulate. So, counsel, I would agree with you that that is a plausible explanation, but under our case law, it's not an explanation. It's an explanation, I think, that the agency is required to address, but I don't think they're required to accept it just because it's plausible, are they? Well, obviously, that's a decision for Your Honors, but I would like to state actually three items of evidence that specifically do demonstrate her fear to return to China. First of all, isn't there some inconsistency with even what she's represented as to her visit to the Chinese consulate? In your brief, you say that she's testified that she wanted to work in order to pay for her daughter's schooling, and so she needed to get this identification, but then in 2012, she testified that she had never applied for a work permit in the U.S., that she was injured, and she wasn't looking for work. Is there some tension there between what she's represented herself in her own testimony? Well, I don't believe so, Your Honor. Whether or not she did, in fact, apply for work, the fact remains that she does need an ID here in the United States, and so regardless of whether she applied for work, she still needed to have an ID, and her passport was her only ID, so she felt forced to go to the consulate to obtain the ID. However— But it would be probative of her credibility on this visa visit, correct? Well, yes, I agree that that may be considered, but I don't think that's an overriding factor. There are three things that describe the reason that she's afraid to return to China. I mean, number one, she explained that she had come to the United States in violation of her surveillance, and that was a violation of law. Secondly, she talked about the fact that the Chinese police had pestered her ex-husband many times and threatened him or asked him to have her returned to China. Furthermore— But counsel, even if, again, even if these were reasons that the agency could credit to support her claim if they found her credible, it all depends on their finding her credible, right? Yes, I agree. In each case where the immigration judge found her not credible, I believe there's specific evidence that shows that she was, in fact, credible. But as regarding her fear of returning to China, I mean, additionally, in addition to the fact that she had violated her supervision, she had—she had suffered a forced abortion. And your honors, this court itself has specifically, under the case of Wang Biafra, held that the plain language of the statute provides that a forced abortion is per se persecution and triggers asylum eligibility. So— Singapore, Thailand, United Arab Emirates, and never sought asylum, correct? Yes, that's true. However, her forced abortion had occurred in 1989. I believe she went to Thailand in 2002, but the main reason that she felt like she had to escape from China was her arrest and beating and a persecution that occurred in 2007. And she explained that it was this persecution that occurred in 2007, which felt—made her feel like she had to escape China. So, I don't think that's—also, in addition to that fact, in 2002, her daughter was only four—I'm sorry, five or six years old. And so, if she had stayed in Thailand at that time, if she had sought asylum at that time, she would effectively have been abandoning her daughter. So, I think it's a very valid reason for her to go back to China. And then, in 2007, when she was arrested and beaten, that gave her impetus to feel like she had to seek asylum at that point in time. In addition to these other incidents that we've talked about, Your Honors, it should also be noted that all of Ms. Zhao's documents are consistent with her testimony and were entered into evidence without objection. The 2007 medical record that she submitted confirms that in 2007, she had, in fact, demanded removal of the contraceptive implants that were This is what resulted in her arrest, beating, and detention in 2007. So, I think the fact that she returned to China in 2002 is de minimis as a factor regarding her fear of persecution. Your Honors, the bottom line in this case is every single fact that the immigration judge relied on is simply not supported. The immigration judge, in his written decision, held it against Ms. Zhao that her daughter didn't testify, and he stated in his written decision that she had been told in a hearing in 2012 that her daughter needed to testify. However, Your Honors, in reviewing that transcript, I can tell you that that simply is a misstatement of any specific notice that the daughter needed to testify. It wasn't until the actual trial that the immigration judge asked her if she thought— Counsel, your time is up. Why don't you conclude, please? It wasn't until the actual immigration trial that the judge himself asked her if he thought she should have had her daughter testify, and she said, I don't know. In other words, she'd never been addressed that issue. The judge had never given her adequate notice. Thank you, Your Honor. All right. Thank you, Counsel. We'll hear from the government. Thank you, Your Honor. May it please the Court, Matthew George for the Attorney General. Substantial evidence and the totality of the circumstances support the Board's findings. The Board pointed to four specific and cogent reasons supporting its finding. Petitioner willingly returned to China in 2002 despite her 1989 forced abortion. Petitioner did not present her daughter as a witness despite the daughter's presence in the United States and knowledge of the facts of Petitioner's case. Petitioner replaced her passport at the Chinese consulate despite not wanting the Chinese government to know her existence. Counsel, for example, on the visits out of the country after the forced abortion, she offered an explanation, correct? She did, Your Honor. And did the agency address her explanation in their findings? Did the BIA address her explanation? It considered it. Where in the BIA's decision does it indicate it considered her explanation for that? It's on the first page about three quarters of the way down where it actually lists that explanation. Didn't it merely just mention her statement but didn't evaluate it at all? The implication is that the Board rejected that explanation. It mentioned the just as Judge Fischer did, that they say what she said, but then the agency doesn't address it at all. And it is a plausible explanation. They're not required to, I think, accept it, but I think they're required to do more than just say this is what she said without addressing it. Well, what more should the Board say? We reject that explanation? I'm not sure there's much more to that. Give an answer as to why they're rejecting it as opposed to just saying, here's the finding, this is what she said, let's move on. Well, that's what, I mean, what more should the Board do? The ultimate conclusion is that it's found that that was not a convincing explanation for that inconsistency, that implausibility. Well, I would expect something from the Board to actually say it, but why don't you continue? But I'm not sure what else. We know the Board's conclusion is that it's an implausibility or inconsistency, and it's not accepting that explanation. If it's just about articulating that more, I don't know if that's necessarily an efficient use of the judicial and Board resources and just to add more explanation. Well, again, I don't want to belabor this point, but I don't think it's requiring adding more explanation. I think it's requiring some explanation, but I understand your argument. Counselor, how does Mr. George, how does the Batari versus Lynch two-step process for evaluating credibility determinations on review when the IJ and the BIA conflate the credibility determination and corroboration documents and corroboration determinations? How does that decision, how does that two-step process impact your argument? Well, as I pointed out in the 28J letter that I filed, this Court's decision in Alam and the Supreme Court's decision in Mingdi call into question that two-step process set out in Batari. And in Alam, the Court said that the consideration, the analysis is the totality of the circumstances. It doesn't say to break things out as the Court did in Batari into corroborative and non-corroborative analyses or pieces and parts of evidence. It says look at the totality, and that's what the agency did here. In addition, in Mingdi, the Supreme Court rejected the deemed credible or the otherwise credible rule that the Court relied on in Batari in doing that analysis, in rejecting the non-corroborative portions of the adverse credibility finding and deeming the petitioner in that case credible. And then going on to do a Wren type of analysis, which Wren is based on a different subsection of the statute, as this Court has pointed out in other cases that I cited there. The adverse credibility statute is a separate subsection that doesn't have the statutory language that Wren relied on, that Batari relied on in making that two-step analysis. So in light of Alam, in light of Mingdi, it's questionable whether the Batari two-step analysis really is still applicable, whether it's reconcilable with those that the Supreme Court's decision in Mingdi. That being said, even if we were to do the analysis in Batari, this case meets that standard. If we look at the non-corroborative inconsistencies or implausibilities, substantial evidence supports those. Petitioner provided explanations that the agency did not accept. It's not required to corroborate. I'm sorry, Judge Carroll. Looking at the transcript of the immigration judge's discussion with the petitioner about what information was needed from the daughter, why don't you explain why that's sufficient notice? Because the transcript does not, at least from my perspective, provide clear notice to what the petitioner was supposed to provide regarding her daughter. I certainly agree that it doesn't explicitly say provide the daughter for testimony. Now, I want to interject quickly, as I pointed out in the 28-J letter. This court has said that that notice requirement doesn't apply in adverse credibility cases, and those are post-Batari cases. However, looking at what the immigration judge and the parties at that hearing discussed, the sort of clear import of it was that the daughter's information testimony was very important. And that's what was, again, discussed at the actual merits hearing, was does your daughter have knowledge of the surveillance? And petitioner said, yes, she does. And then she was asked, well, do you think your daughter should testify? And she said, I don't know. So the clear import of what the discussion in 2012 was was to have all that information from the daughter. Now, there wasn't any... Counsel, let's say we disagreed with you on the notice. Let's say we found that the notice to petitioner that she needed to have corroboration from her daughter was insufficient, but we were to find that some of the other grounds could support an adverse credibility finding. Wouldn't we still be required to send it back to the agency to decide that either without the daughter issue or if they wanted to send it back to the IJ to give her the opportunity to bring in the daughter, wouldn't we have to send it back to them to reweigh whether what's left is enough? We couldn't do that ourselves, could we? No. No, Your Honor. If you find that any one of the grounds that the agency relied on is insufficient under alum, you would have to send it back. However, I do want to point out that the court has held post batteri that that notice requirement does not apply in the adverse credibility context. And I cited two different cases there where the court explicitly said that the agency, the immigration judge, is not obligated to give the petitioner notice about that corroborative evidence in the adverse credibility context, because that applies in the sustaining the burden context, which is a different statutory subsection. So before the court reaches that some sort of error there, I would ask that it look at those cases and really consider does that notice requirement apply in the adverse credibility context? And also look at everything... I did not understand that to be your argument from the 28J letter that you filed yesterday. You're saying there's no obligation to comply with Wren or with Sidhu? Is that your argument? That's what the court has said in the Yali Wang and the Mukulam Butu cases. They both say that Wren doesn't apply in the adverse credibility context. And that's the only source of... That's what batteri used as the source of that corroboration and notice requirement. All right. Thank you, counsel. I think we have your argument. Mr. Murr, you didn't ask to rebuttal, but if you'd like a minute for rebuttal, we will give that to you. Thank you, your honors. Yeah, in his opening statements, counsel indicated that there were four items of evidence that support their argument. And we already discussed three of them. The return to China in 2002, the daughter not being a witness, and her receiving a passport at Chicago. But his fourth statement, he said medical evidence that she supplied did not support the fact that she had a forced abortion. I can tell the court I've practiced immigration law for about 25 years and handled hundreds of forced abortion cases. And never are you ever going to find any medical evidence from China that specifically states a forced abortion. There might be evidence that supports an abortion, but it will never state that it's a forced abortion. So I believe that's a red herring that counsel has provided as evidence, which is just a non-fact. All right. Thank you. Thank you, counsel. We thank both counsel for their helpful arguments, and the case just argued will be submitted. We're now going to move on to the second case on the argument. Could we go back? It's too late now. They jumped off. No, there he is. They jumped off. No, go ahead. I wanted to go back and ask if Mr. Murray could respond perhaps in writing to that last paragraph of the 28-J letter from yesterday on whether or not an adverse credibility determinations, whether or not the IJ is required to give an opportunity to provide corroborating evidence. All right. Can you do that within a week, Mr. Murray? Yes, your honors. I apologize. I did not see that email. Apparently, that was sent out by email, and I did not see that email. So I will need to make sure that I've received that information. Mr. George, did you send me that email? Or did I receive that on the Ninth Circuit's distribution? Do you know? I received it by the CMECF. I found it with the court, yes. So you should have received it by CMECF. I'll take a look at that, and I'll provide a briefing on that. All right. So even though you're going to submit a responsive 28-J letter, we will still have the case submitted today, and we will consider your response. Again, thank you both for your helpful arguments. Thank you. Our second case on the argument calendar is Emmanuel versus Nevin.
judges: Fisher, BENNETT, KOH